**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| KIM PRENTICE and CHASTITY KELLY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PERRIGO COMPANY and PERRIGO RESEARCH & DEVELOPMENT,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Kim Prentice and Chastity Kelly ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Perrigo Company and Perrigo Research & Development (collectively "Defendants" or "Perrigo").

## INTRODUCTION

1.      Defendants make, sell, and market "GoodSense" over-the-counter cough, cold and flu medicine (the "Non-Drowsy GoodSense Products" or "Products"), including generic GoodSense versions of brands like DayQuil and Robitussin. [1]  Like the branded versions, these medicines contain the active ingredient Dextromethorphan Hydrobromide ("DXM"), an ingredient that causes drowsiness.

2.      Defendants' Non-Drowsy GoodSense Products state prominently on the front of their label that they are "Non-Drowsy" and "Daytime" products (juxtaposed against Defendants' "Nighttime" versions).  By prominently labeling these products as "Non-Drowsy" and "Daytime,"

---

[1] The Non-Drowsy GoodSense Products include all GoodSense products sold by Defendants that are labeled "Non-Drowsy" and that contain Dextromethorphan Hydrobromide.

Defendants led Plaintiffs and other consumers to believe that the Non-Drowsy GoodSense Products do not cause drowsiness, that drowsiness is not a side effect of those products. Defendants also led Plaintiffs and other consumers to believe that those products are for use during the day, and can be safely and satisfactorily consumed during waking hours, at work, and while driving and operating machinery.

3.      But the truth is that products containing DXM—and thus the Non-Drowsy GoodSense Products—do cause drowsiness, and that drowsiness is a known side effect of DXM (a fact not known by the average consumer).  In reality, the Products cause drowsiness, which in effect destroys the primary reason for purchasing the "Daytime" Products in the first place – for use during the day, when consumers do *not* want to be drowsy.

4.      In this way, Defendants misled Plaintiffs and other consumers about the effects of the Non-Drowsy GoodSense Products.  This was a material misrepresentation that Plaintiffs—and other reasonable consumers—relied on when deciding to buy the products.  Had Defendants been truthful, Plaintiffs and other consumers would not have purchased the products or would have paid less for them.

5.      Plaintiffs bring this case for themselves and for millions of other consumers who purchased Non-Drowsy GoodSense Products.

## PARTIES

6.      Plaintiff Kim Prentice is a citizen of Colorado (domiciled in Aurora).

7.      Plaintiff Chastity Kelly is a citizen of Tennessee (domiciled in Union City).

8.      The proposed class (identified below) includes citizens of every state within the United States.

9.      Defendant Perrigo Company is a Michigan corporation with its principal place of business in East Lansing, Michigan, and has been doing business in the State of Michigan during

2

all relevant times.  Directly and through its agents, Perrigo Company has substantial contacts with, and receives substantial benefits and income from, the State of Michigan.

10.     Defendant Perrigo Research & Development Company ("Perrigo R&D") is a Michigan corporation with its principal place of business in East Lansing, Michigan, and has been doing business in the State of Michigan during all relevant times.  Directly and through its agents, Perrigo R&D has substantial contacts with, and receives substantial benefits and income from, the State of Michigan.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

12.     The Court has personal jurisdiction over Defendants because Defendants are incorporated in this State and maintain their principal place of business in this State.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendants would be subject to personal jurisdiction in this District given that Defendants are incorporated and maintain their principal place of business in this District.

## FACTUAL BACKGROUND

**A.     Defendants make, market, and sell GoodSense products prominently labeled "Non-Drowsy."**

14.     Defendants manufacture, distribute, market, and sell the Non-Drowsy GoodSense Products.

15.     The front label of each Non-Drowsy GoodSense Product prominently states that the product is "Non-Drowsy" and for "Daytime."  For example:

3

**GoodSense Daytime Cold & Flu Multi-Symptom Relief Liquid** [2]



---

[2] http://goodsense.com/products/goodsense-daytime-cold-and-flu-multi-symptom-relief-liquid

**GoodSense Tussin DM Cough & Chest Congestion[3]**



16.     Further, the Products are sold as a "Daytime" products that are meant to be

consumed during the day, and offered for sale as an alternative to Defendants' Nighttime Cold &

---

[3] http://goodsense.com/products/goodsense-tussin-dm-cough-and-chest-congestion-liquid

Flu Relief Products (which have no "Non-Drowsy" claim), such as the one pictured below:



17.     In reality, however, the "Daytime" and "Non-Drowsy" versions cause drowsiness. Accordingly, if a reasonable consumer knew the truth, it would eviscerate the reason that consumers buy "Daytime" or "Non-Drowsy" cold and flu relief products in the first place: to avoid drowsiness when they need to be alert.

18.     These representations are materially the same across all Non-Drowsy GoodSense Products.

6

19.     The Non-Drowsy GoodSense Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect of the Non-Drowsy GoodSense Products.

20.     Based on the prominent "Non-Drowsy" and "Daytime" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness. That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

21.     Indeed, Defendants labeled the products this way because they intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy GoodSense Products cause drowsiness.**

22.     The Non-Drowsy GoodSense Products all contain 20 mg of DXM per dose.

23.     In truth, products containing DXM—like each of the Non-Drowsy GoodSense Products—do cause drowsiness.  Drowsiness is a documented side effect of DXM at the recommended dosages.  Authorities such as the National Library of Medicine [4] list drowsiness as a side effect of DXM.

24.     Indeed, drowsiness is a common side effect at the recommended dosages.  A study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine.[5]  The

---

[4] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed November 22, 2021).

[5]  E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence." Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).

"cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Non-Drowsy GoodSense products. [6]

25.     Furthermore, the FDA's adverse event report database confirms that sedation (i.e., drowsiness) is one of the most frequently-cited side effects of dextromethorphan-containing products. [7]

26.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM. [8]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines.  If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above). |
|---|---|---|---|---|
| Cough | | | | |

[6] For example, GoodSense Daytime Cold & Flu Multi-Symptom Relief Liquid contains 10 mg of DXM per 15 ml of syrup and the recommended dosage is 30 ml orally every 4 hours. http://goodsense.com/products/goodsense-daytime-cold-and-flu-multi-symptom-relief-liquid. Simlarly, GoodSense Tussin DM contains 20mg of DXM per 10 ml of syrup and the recommended dosage is 10 mL orally every 4 hours.  http://goodsense.com/products/goodsense-tussin-dm-cough-and-chest-congestion-liquid.

[7] Sedation is associated with drowsiness.  *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[8] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

**C.       Defendants' Non-Drowsy representations misled reasonable consumers.**

27.      The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

28.      Further, as explained above, Defendants' claims are misleading to consumers in violation of 21 U.S.C. § 352(a)(1) which states, "[a] drug … shall be deemed to be misbranded … If its labeling is false or misleading in any particular."

29.      Based on the fact that Defendants labels the Non-Drowsy GoodSense Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products.  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [9]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness." [10]

30.      Defendants' advertisements and labeling do not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy GoodSense Products actually cause drowsiness.

31.      Unlike Defendants, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by

---

[9] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[10] https://www.merriam-webster.com/medical/nondrowsy

Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:



32.     Defendants could have simply omitted the false and misleading statements, "Non-Drowsy" and "Daytime" from its products.

33.     Or, if Defendants wanted to say something to indicate that a Non-Drowsy GoodSense Product might cause *less* drowsiness than another GoodSense product, they could have made a truthful statement to this effect, as other drug makers do.

34.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



35.     Because Defendants make and sell the Non-Drowsy GoodSense Products, Defendants researched the known and common side effects of DXM.  This is diligence that large companies like Defendants would do when selling a drug.  As a result, Defendants knew that DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" and "Daytime" representations, and know the plain meaning of "Non-Drowsy." Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.  For these reasons, Defendants knew that their labeling was false and misleading, or were reckless or willfully blind to this fact.  And as alleged above, Defendants intended that consumers would rely on the "Non-Drowsy" and "Daytime" labeling, so that consumers would purchase more products, pay a price premium, and buy them as alternatives to its "Nighttime" products.

36.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a

11

reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

37.     Defendants' false statements increased the demand for Non-Drowsy GoodSense Products and allowed Defendants to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" and "Daytime" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving) and that they can take during the day.  As a result, Defendants were able to charge more for these products than they would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendants' false statements, Defendants were able to charge a price premium for these products.  As purchasers, Plaintiffs and each class member paid this price premium and sustained economic injury.

**D.      Plaintiffs were misled by Defendants' misrepresentations.**

38.     On November 1, 2021, Plaintiff Prentice bought a bottle of GoodSense "Non-Drowsy" Daytime Severe Cold & Flu from Walmart in Aurora, Colorado.  The package said "Non-Drowsy" and "Daytime" prominently on the label, and she read and relied on those statements when purchasing the product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the GoodSense "Non-Drowsy" Daytime Severe Cold & Flu Relief on the same terms, or would not have purchased

them at all, had she known these representations were not true.  However, Plaintiff Prentice did

not receive the benefit of her bargain because her Non-Drowsy GoodSense Product was not, in

fact, "Non-Drowsy" or a "Daytime" medication.  When Plaintiff Prentice took the medication as

directed by Defendants, she became unexpectedly drowsy.  She would not have bought this

product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a

known side-effect of the product.

39.     On October 12, 2021, Plaintiff Kelly bought a bottle of GoodSense "Non-

Drowsy" Tussin DM from Walmart in  Nashville, Tennessee.  The package said "Non-Drowsy"

and "Daytime" prominently on the label, and she read and relied on those statements when

purchasing the product.  Accordingly, these representations and warranties were part of the basis

of the bargain, in that she would not have purchased the GoodSense "Non-Drowsy" Tussin DM

on the same terms, or would not have purchased them at all, had she known these representations

were not true.  However, Plaintiff Kelly did not receive the benefit of her bargain because her

Non-Drowsy GoodSense Product was not, in fact, "Non-Drowsy."  When Plaintiff Kelly took the

medication as directed by Defendants, she became unexpectedly drowsy.  She would not have

bought this product had she known that the product did, in fact, cause drowsiness, and that

drowsiness was a known side-effect of the product.

40.     To be sure, Plaintiffs would purchase Non-Drowsy GoodSense Products again if

they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiffs,

however, face an imminent threat of harm because they will not be able to rely on the labels in

the future, and thus will not be able to purchase the products.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy GoodSense Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

42.     Plaintiff Prentice also brings those claims on behalf of a subclass of consumers who, like Plaintiff Prentice, purchased Non-Drowsy GoodSense Products in Colorado (the "**Colorado Subclass**").

43.     Plaintiff Kelly also brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy GoodSense Products in Tennessee (the "**Tennessee Subclass**").

44.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6)  the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity*

45.     The proposed classes contain members so numerous that separate joinder of each member of the class is impractical.  There are millions of proposed class members.

14

*Commonality*

46.     There are questions of law and fact common to the proposed classes.  Common

questions of law and fact include, without limitation:

- Whether the Non-Drowsy GoodSense Products cause drowsiness;

- Whether Defendants' labelling of the Non-Drowsy GoodSense Products as "non-drowsy" and "daytime" is deceptive and misleading;

- Whether Defendants violated state consumer protection statutes;

- Whether Defendants committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiffs and the proposed classes.

*Typicality*

47.     Plaintiffs' claims are typical of the proposed class.  Like the proposed class,

Plaintiffs purchased Non-Drowsy GoodSense Products.  Like the proposed class, Plaintiffs

would not have purchased the products, or would have paid less for them, had they known that

they cause drowsiness.

*Predominance and Superiority*

48.     The prosecution of separate actions by individual members of the proposed

classes would create a risk of inconsistent or varying adjudication with respect to individual

members, which would establish incompatible standards for the parties opposing the class.  For

example, individual adjudication would create a risk that breach of the same express warranty is

found for some proposed class members, but not others.

49.     Common questions of law and fact predominate over any questions affecting only

individual members of the proposed classes.  These common legal and factual questions arise

from certain central issues which do not vary from class member to class member, and which

may be determined without reference to the individual circumstances of any particular class

member.  For example, a core liability question is common: whether Defendants breached an

express warranty by falsely marketing products that cause drowsiness as "Non-Drowsy."

50.     A class action is superior to all other available methods for the fair and efficient

adjudication of this litigation because individual litigation of each claim is impractical.  It would

be unduly burdensome to have individual litigation of millions of individual claims in separate

lawsuits, every one of which would present the issues presented in this lawsuit.

**CAUSE OF ACTION**

**Count I: Breach of Express Warranty**
**(on behalf of Plaintiff, the Nationwide Class,**
**the Colorado Subclass, and the Tennessee Subclass)**

51.     Plaintiffs incorporate by reference each and every factual allegation set forth

above.

52.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide

Class.

53.     Plaintiff Prentice also brings this cause of action on behalf of the Colorado

Subclass.

54.     Plaintiff Kelly also brings this cause of action on behalf of the Tennessee

Subclass.

55.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers

of the Non-Drowsy GoodSense Products, issued material, written warranties by representing that

the products were "Non-Drowsy" and were "Daytime" products.  These were an affirmation of

fact about the products (i.e., a description of the effects) and a promise relating to the goods.

16

56.     Defendants marketed the Non-Drowsy GoodSense Products to consumers, and Defendants' warranty was the basis of the bargain and was relied-upon by Plaintiffs and Class members.

57.     The Non-Drowsy GoodSense Products do not conform to the above-referenced representation because they cause drowsiness.  Thus, the warranty was breached.

58.     Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Non-Drowsy GoodSense Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the warranty.

59.     Plaintiffs provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters on February 11, 2022.

### Count II: Breach of the Magnuson-Moss Warranty Act
**(on behalf of Plaintiff, the Nationwide Class,
the Colorado Subclass, and the Tennessee Subclass)**

60.     Plaintiffs incorporate by reference each and every factual allegation set forth above.

61.     Plaintiffs allege this claim individually and on behalf of the Nationwide Class.

62.     Plaintiff Prentice also brings this cause of action on behalf of the Colorado Subclass.

63.     Plaintiff Kelly also brings this cause of action on behalf of the Tennessee Subclass.

64.     Defendants supplied Non-Drowsy GoodSense Products to consumers and Non-Drowsy GoodSense Products are consumer products.

65.     Defendants issued material, written warranties by representing that the products were "Non-Drowsy" and "Daytime" products.  This was an affirmation of fact about the material

17

in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

66.     Defendants represented that the material inside the Non-Drowsy GoodSense Products (the ingredients) would meet a specified level of performance over a specified period of time.  Defendants represented that, when taken at the recommended dosages, the products' ingredients would not cause drowsiness and that drowsiness is not a side-effect.

67.     Defendants marketed Non-Drowsy GoodSense Products to consumers, and Defendants' warranty was the basis of the bargain and was relied-upon by Plaintiffs and Class members.

68.     In fact, the Non-Drowsy GoodSense Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

69.     Plaintiffs provided Defendants with notice of this breach of warranty by mailing a notice letter to Defendants' headquarters on February 11, 2022.

70.     Plaintiffs and the Classes were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Non-Drowsy GoodSense Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because the products are sold at a price premium due to the warranty.

## Count III: Intentional Misrepresentation
### (on behalf of Plaintiff, the Nationwide Class, the Colorado Subclass, and the Tennessee Subclass)

71.     Plaintiffs incorporate by reference each and every factual allegation set forth above.

72.     Plaintiffs allege this claim individually and on behalf of the Nationwide Class.

73.     Plaintiff Prentice also brings this cause of action on behalf of the Colorado Subclass.

74.     Plaintiff Kelly also brings this cause of action on behalf of the Tennessee Subclass.

75.     As alleged in detail above, Defendants' labeling represented to Plaintiffs and Class members that the Products do not cause drowsiness, that drowsiness is not a side effect of these products, and that the Products are for "Daytime" use.

76.     These representations were false and misleading.  As alleged above, the Products do cause drowsiness and drowsiness is a documented side effect.

77.     As alleged in detail above, when Defendants made these misrepresentations, they knew that they were false, were reckless to the truth, or were willfully blind.

78.     Defendants intended that Plaintiffs and Class members rely on these representations and Plaintiffs and class members read and reasonably relied on them.

79.     Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

80.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks a judgment against Defendants as follows:

A.      An order certifying the asserted claims, or issues raised, as a class action;

B.      A judgment in favor of Plaintiffs and the proposed classes;

C.      Damages, including statutory, treble, and punitive damages where applicable;

D.      Restitution;

E.      Disgorgement, and other just equitable relief;

F.      Pre- and post-judgment interest;

G.      An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

H.      Reasonable attorneys' fees and costs, as allowed by law; and

I.      Any additional relief that the Court deems reasonable and just.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: February 24, 2022                     Respectfully submitted,

                                             By: */s/ Nick Suciu III*
                                             One of Plaintiff's Attorneys

                                             Nick Suciu, III (State Bar No. P72052)
                                             nsuciu@milberg.com
                                             MILBERG COLEMAN BRYSON PHILLIPS
                                             GROSSMAN, PLLC
                                             6905 Telegraph Road Suite 115
                                             Bloomfield Hills, MI 48301
                                             Telephone: 313-303-3472

                                             Yeremey Krivoshey*
                                             ykrivoshey@bursor.com
                                             Brittany S. Scott*
                                             bscott@bursor.com
                                             BURSOR & FISHER, P.A.
                                             1990 North California Blvd., Suite 940
                                             Walnut Creek, CA 94596
                                             Telephone: (925) 300-4455
                                             Facsimile:  (925) 407-2700

                                             Jonas Jacobson*
                                             jonas@dovel.com

20

Simon Franzini*
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

*Attorneys for Plaintiffs*

*\*Pro Hac Vice Forthcoming*